Com. ex rel. Bentley *v.* Bentley, Appellant.

Argued November 21, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*James L. Rankin* of *Geary & Rankin,* for appellant.

*E. Wallace Chadwick,* and with him *Thomas A. Curran,* for appellee.

OPINION BY TREXLER, P. J., March 17, 1933:

The present writ of habeas corpus was issued to determine the custody of three minor children. R. Peel Bentley, the father of the children, is the relator and Elisabeth Poole Bentley, the mother, is the respondent. The parties lived together until October 18, 1928, when he left their common domicile and went to his parents' home where he still resides. There are three children, Robert aged 15, Lillian 13 and James 10. The title, to the house in which she and the children live, is held by her and the relator as tenants by entireties. The same matter that is before us now was considered by the lower court in a proceeding on a habeas corpus issued at the instance of the husband in 1928, and after a long hearing the custody of the children was awarded to the mother. Then, as now, each party attacked the fitness of the other to have the custody of the children. The court in the opinion filed in the present case stated that at the prior hearing it was in some doubt as to whether either was a proper person to have the care of the children, and reluctantly awarded the children to the mother attaching liberal conditions in favor of the father's right to visit them, and have them with him frequently. In April, 1932, the present action was brought. There was a protracted taking of testimony, the record of which, with the documentary evidence, comprises

nearly 500 printed pages. The lower court reversed its former action and remanded the children to the care of the father, as long as he would continue to reside in the home of the paternal grandparents.

The case presents some difficulty. After a reading of the testimony it is easy to arrive at the conclusion that both parties are at fault. In the husband's favor it may be stated that he has contributed to the support of his wife and children and taken care of the house which they occupy. The paternal grandmother has sent Robert for three years to the Episcopal Academy, and his intention is to enter Harvard University and become a lawyer. She has also furnished the means to send him to a boys' camp. She also has arranged to send Lillian to a private school for girls and to Wellesley later and then to a medical school. The same liberal treatment, following his inclination, is to be accorded to the youngest son, James.

On the other hand, we feel warranted in saying that the atmosphere of relator's home, unless changed, is not such as will tend to preserve the love and respect of these children for their mother. Any mere casual reference to her is banned. There should be no such repression in this regard, and all allusions to the mother should be such as would incline the children to respect her. We might say in passing there is nothing in the testimony which reflects upon her character; whatever faults she may have, as far as the present case discloses, are due to temperament. There is no doubt there is a violent dislike on the part of the husband and his relatives to the mother of the children, but for the sake of the welfare of the children, there should be no manifestation of it. Moreover, the religious tendencies of these children should be fostered.

On the wife's side there are witnesses who testify that her home is peaceful, and that the daily affairs go on without any violent interruptions. Other witnesses testify to loud altercations that have occurred.

Both may be telling the truth. Isolated instances of contention do not necessarily indicate the usual routine of a family. There is some evidence that the mother has endeavored to prejudice the children against the father, at least that inference can be made. After the court entered a decree in favor of the mother, in the former controversy, she had a copy of the decree tacked up in the house where they could see it. There is also evidence that when a prosecution was brought against the father for driving an automobile when intoxicated, (whether well founded or not does not appear) the mother endeavored to prevent a settlement of the case, evidently thinking that if the case were pressed and the facts developed, it would be of use to her in preventing the court giving the children to him. There are various incidents of minor importance to which reference need not be made.

No doubt the determining factor which influenced the court to take the custody of the children from the mother is the testimony to the effect that she had lost control of them. This conclusion is reached principally from the conduct of Robert on many occasions. His actions caused complaints to be made by the neighbors, and led to a call on the police department to interfere. He evinces a desire to continue to reside with his mother, but he has largely himself to blame for the change which is impending. All these children are of fair intelligence. The conduct of Robert in his examination, before the court, shows the pertness of the boy who, by asserting himself and trying to be smart, seeks to impress his importance upon others. He is now at that age that he can probably be reasoned with and become sensible to the foolishness of his conduct. Back of it all the boy has some merit, and under proper treatment will likely become a useful citizen. Lillian is stated to be supercilious and reserved, but

apparently these qualities were most evident when she came in contact with her father's relatives and may have been due to their attitude toward her mother which it is quite natural she would resent. The youngest boy is awarded to the father no doubt for the reason that the children should not be separated.

The important element, as is well known, is the consideration for the welfare of the children. Weight is to be given to the fact that these people are known to the lower court, and that it has a better opportunity of passing upon the ability and character of the parties to this contest than we have. Com. v. Witte, 80 Pa. Superior Ct. 397. It is our duty to review the testimony (Act of June 11, 1917, P. L. 817) and decide according to our convictions, but in a doubtful case, such as this, we are inclined to accept the conclusions reached by the lower court. It is very evident that the learned judges composing the lower court gave the matter very careful attention and had an eye single to the welfare of the children involved, and we see no reason why their judgment of the matter should not stand. The present order should be given a fair trial. The court below suggests that the order is always open to modification if changed conditions warrant it. The decree entered by the lower court reserves to the mother, "the right to have her said children visit at her home as frequently as she or they may desire; that she may have the exclusive custody of her said children or any of them any afternoon or afternoons, seeing that they are returned to the home of their said father at or before sundown of each day, unless their father consents to their later return, provided this custody does not interfere with their studies in any way, and she may, with the approval of their said father, have such other custody of them during vacation periods as may be approved of by their said father." It is to be hoped that the mother will not take advantage of the contact with the children af-

forded to her to interfere with the discipline that may be exercised by the father, and that the father will not raise obstacles to their frequent visits to their mother.

The decree is affirmed.