Commonwealth ex rel. Lewis *v.* Tracy et ux,
Appellants.

Argued April 12, 1944. Before KELLER, P. J., BALD-
RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*George J. Barco,* for appellants.

No one appeared or filed a brief for appellee.

Opinion by KENWORTHEY, J., July 15, 1944:

The subject of this controversy is the custody of petitioner's ten-year old, illegitimate daughter. Respondent, Hazel P. Tracy, is petitioner's mother. The other respondent, Helge B. Tracy, is petitioner's stepfather.

The court awarded the custody of the child to petitioner. Respondents appeal.

In cases of this kind, we are not limited to the inquiry whether there is sufficient evidence to support the order of the court below; it is our duty to examine all the evidence and reach an independent determination: *Com. ex rel. Goessler v. Bernstein*, 149 Pa. Superior Ct. 29, 26 A. (2d) 213. We shall briefly point out why, in our opinion, the welfare of the child will be better protected by leaving her with respondents in whose home she was born and where she has lived throughout most of her life. The order will therefore be reversed.

Respondents own and operate a ninety-three acre farm on which they live near Centerville in Crawford County. In addition to working on the farm respondent, Helge B. Tracy, works in a war plant and earns about $60 per week. We are satisfied that the home is well maintained and affords a proper environment for the child; she is well cared for, she is well adjusted to the school in the work of which she excels, and her religious education is adequately provided for. Respondents enjoy a good reputation in the community; in fact, the court below conceded their fitness.

Petitioner was born in 1917. She too was apparently illegitimate; Mrs. Tracy's first marriage, to Edward Pitt whom she divorced in 1922 to marry Tracy, did not occur until some months after petitioner's birth. The child, Betty Jean, was born in 1934 at the home of respondents when petitioner was a girl of seventeen and unmarried. Petitioner gave the child the surname Lewis, perhaps, although it does not appear in the record, because that was the name of the father. With-

in a few months after the birth of the child petitioner married Earl Christy and left respondent's home with him, leaving the child with respondents. It appears that petitioner and Christy moved about from place to place a great deal during the five years they were married, living for periods as long as a month or two with respondents. During one of the few periods that they had the child with them, the exact time of which is not shown, they were living in a tent and brought the child to the respondents because inclement weather jeopardized the child's health. The court, in our opinion, too narrowly limited the inquiry into petitioner's fitness and improperly excluded evidence offered by respondents to show that during the period petitioner was married to Christy "she was running around" with Kingan, her present husband, and was otherwise guilty of immoral conduct: *Latney's Appeal,* 146 Pa. Superior Ct. 20, 22, 21 A. (2d) 521.

Petitioner was divorced from Christy under circumstances not shown by the record and married Kingan in 1939.

We are satisfied that until December 1942, respondents, in spite of the confusion in the domestic lives of all the parties, were on friendly terms with petitioner. Petitioner and her husband visited the home of respondents frequently. She apparently was permitted to visit her child without restraint or restrictions. At no time until December 1942, does it appear that petitioner showed any particular desire for the custody of the child with its attendant responsibilities. She admittedly made no contribution toward her support although she stated she made the child's dresses. All of the parties seemed to be reasonably contented with the status quo. The only explanation for petitioner's rather sudden change of position in December 1942 is the somewhat uncharitable one advanced by counsel for respondents that by assuming the responsibility of a dependent child Kingan's

selective service status would be improved by changing it to a deferred classification. At any rate, on December 7, 1942, apparently without any warning, petitioner and Kingan "snatched" the child from school and took her to their home at French Creek, New York, a fact which, in itself, has some bearing on the fitness of petitioner: *Com. ex rel. Rogers v. Daven et al.,* 298 Pa. 416, 423, 148 A. 524.

There immediately followed a habeas corpus proceeding in New York, as a result of which respondents were awarded the custody of the child and, acting under the court's order, they, in January 1943, brought the child back to their home. The present petition was filed almost immediately thereafter.

We have in mind the general rule that, other things being equal, the custody of a child of tender years, whether legitimate or illegitimate, should be awarded to the mother: *Latney's Appeal,* supra. But the paramount issue is the best interest and permanent welfare of the child. *Com. ex rel. Goessler v. Bernstein,* supra. An award of custody in a case like the present is not indelible. Upon a showing of a change of circumstances or an improvement, over a reasonable period of time, in petitioner's interest in and devotion to the child and the acquisition of a more stable home she may again apply to the court and her application will receive proper consideration: *Com. ex rel. Rogers v. Daven,* supra.

We are of one mind that, for the present at least, the welfare of the child will be more secure by awarding her to the custody of respondents.

The order is reversed. And the record is remitted and the court below is directed to enter an order awarding the custody of the child to respondents, Helge B. and Hazel P. Tracy, under such conditions as the court shall deem appropriate not inconsistent with this opinion.