Commonwealth ex rel. Sissel *v.* Sciulli et ux.,
Appellants.

Argued April 13, 1970.   Before WRIGHT, P. J., WAT-
KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and
CERCONE, JJ.

*Abe R. Cohen,* with him *Crone and Cohen,* for appellants.

*Mark L. Unatin.* with him *Goldman & Unatin,* for appellee.

OPINION BY SPAULDING, J., June 11, 1970:

This is a custody case, which arises in a complex factual setting.

In July 1967, Michael and Nancy Sciulli had been married three years and lived together in Pittsburgh with their children, John Edward, eight months old, and Michael John, twenty-six months old. Stuart and Marta Sissel were very close friends of the Sciulli's, and the two couples spent a great deal of time in each other's company. Michael became suspicious of the relationship between Stuart and Nancy and accused them of an undue interest in each other, which both denied. Marta never entertained any suspicions.

On July 14, 1967, Nancy left the Sciulli home while Michael was sleeping and took the two children. Michael was unable to locate them until Nancy's mother called three days later and informed him that the children were with her and asked him to come and take them home. Michael immediately came for the children and they have been living with him since that time. Within forty-eight hours after the children returned home, Nancy Sciulli and Stuart Sissel drove to California together, leaving Stuart's wife Marta, with their two children, then approximately five and six and one-half years old. Nancy and Stuart lived in California and in New Jersey until their respective spouses se-

cured decrees in divorce. They then married and returned to Pittsburgh.

In February 1968, Michael Sciulli and Marta Sissel married, being brought together by their common problems, arising from the infidelity of their respective spouses. There was no suggestion of romance prior to the separation. Following their marriage, Marta, her two children, and Michael's two children, joined him in Philadelphia, where he had moved for a better job opportunity. They lived there until February 1969, when they returned to Pittsburgh where they now reside.

In May 1969, Nancy Sissel filed a petition for habeas corpus, seeking custody of her sons, John and Michael. Hearings were held in the Court of Common Pleas, Allegheny County, Family Division, and on February 6, 1970, the court awarded custody of the two children to Nancy Sissel. Appellants, Michael and Marta Sciulli appeal from that award. (A supersedeas has been granted pending this appeal.)

The scope of our review is quite broad. Section 1 of the Act of July 11, 1917, P. L. 817, 12 P.S. §1874, directs us to "Consider the testimony and make such order upon the merits of the case . . . as to right and justice shall belong." This review was limited to some extent in *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 97 A. 2d 350 (1953), which holds that we cannot nullify the fact finding function of the hearing judge; in matters of credibility of witnesses and the weight to be given their testimony we must accept his findings. However, ". . . this rule does not apply in favor of deductions or inferences which are made by the trial judge from the facts which he has found. The conclusions of the trial judge, being no more than his reasoning from the facts, are always reviewable, . . . by an appellate court." *Commonwealth ex rel. Gregory*

*v. Gregory,* 188 Pa. Superior Ct. 350, 356, 146 A. 2d 624, 627 (1958).

In questions of custody, paramount importance is placed on the welfare of the children involved. *Commonwealth ex rel. Shipp v. Shipp,* 209 Pa. Superior Ct. 58, 223 A. 2d 906 (1966); *Commonwealth ex rel. Ruczynski v. Powers,* 421 Pa. 2, 219 A. 2d 460 (1966), states the policy eloquently: "In determining the custody of a child of tender years, there is only one polestar, one compass, one standard of reasoning to follow, and that is the best interest of the child." In ascertaining the best interests of such a child, we have used the very strong presumption that a child of tender years belongs in the custody of his mother. *Commonwealth ex rel. Logue v. Logue,* 194 Pa. Superior Ct. 210, 166 A. 2d 60 (1960), and the cases cited therein. Because of the peculiar factual pattern of this case, however, we conclude that the presumption applies equally to Marta Sciulli as it does to Nancy Sissel. Although the children in issue, John and Edward Sciulli know that Nancy is their natural mother, they consider Marta to be their mother. They have lived with their father and stepmother for almost three years (most of their lives). The language of *Commonwealth ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 97, 66 A. 2d 300 (1949), in a factually distinguishable case, supports our view. "A child of two years of age or under will form new attachments quickly, if treated kindly by those into whose care it is given, . . . but when a child is much beyond the age of two years, it becomes strongly attached to those who stand in parental relationship to it and who have cared for it. Its bonds of affection have become so strong that to sunder them suddenly may result not only in the child's unhappiness, but also in its physical injury. . . . To take this nearly 65 months old girl, Betty Jean Tuttle, away from the only parents she has known since she was an infant of eighteen

months would be exactly the same in its effect on her and on the man and woman who have stood in a parental relationship to her for nearly four years as would the separation of any well cared for child from its own parents. . . . to a child it is equally cruel whether the separation is brought about by 'kidnapping' or by legal process."

Furthermore, the testimony was uncontroverted that Marta Sciulli makes no differentiation between her natural and stepchildren, and in fact all four children regard each other as full brothers and sisters. This Court has been reluctant to separate brothers and sisters except for compelling reasons. *Commonwealth ex rel. McKee v. Reitz*, 193 Pa. Superior Ct. 125, 163 A. 2d 908 (1960).

We recognize the interest that Nancy Sissel has in regaining custody of her children. In making our decision in this case we have taken into consideration the fact that the precipitous actions of Nancy and Stuart caused this human tragedy; and the fact that Stuart did not testify at the hearings on behalf of his present wife, and has never indicated interest in assuming fatherly responsibilities for two stepsons. Our review of the record indicates that it would be more beneficial to John and Edward to remain in their present home, an admittedly warm and stable one, than to place them in the charge of their natural mother, a virtual stranger.

The order of the court below is reversed with custody of John and Edward Sciulli to remain with Michael and Marta Sciulli. The record is remanded for the court below to enter such visitation rights and other privileges as it may deem advisable.