371 A.2d 998

**Samuel SMITH, Appellant in No. 279,**

**v.**

**Annette W. SMITH, Appellant in No. 272.**

Superior Court of Pennsylvania.

Argued June 17, 1976.

Decided March 31, 1977.

608

A. Martin Herring, Philadelphia, for appellant at No. 272 and appellee at No. 279.

Albert Momjian, Philadelphia, for appellant at No. 279 and appellee at No. 272.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

██ The instant appeals arise from a protracted and complex action involving questions of custody, visitation and child support. Samuel Smith and Annette W. Smith were married in 1952 and divorced in 1971. The only child of their marriage, a son, was ten years old at the time of the litigation before the lower court. The action in the lower court arose out of the father's attempts, through court action, to obtain the custody of his son. The lower court held extensive hearings in the case, consuming approximately fourteen court days and producing a prodigious volume of testimony and exhibits for review.

From the final Order of the lower court, the appellant mother challenges both procedurally and substantively the award of primary custody of the son to the father. The father, also an appellant, challenges the Order of the lower court with reference to the command that he pay a certain amount of support and provide certain transportation during times of visitation by the son with the mother. We have been aided in our review by thorough briefs by counsel for both parties, in addition to a supplemental *pro se* brief filed by the appellant mother. As is our duty in custody matters we have given the total record and all contentions by the parties thorough scrutiny. See *Commonwealth ex rel. Ulmer v. Ulmer*, 231 Pa.Super. 144, 331 A.2d 665 (1974). Following such broad review we have concluded that the Order of the lower court was entirely proper and we therefore affirm.

The appellant mother, in the appeal docketed at No. 272 October Term, 1976, raises several challenges to the Order of the lower court granting custody of the minor son to his father. As her first contention, she claims that the lower court held an ex parte hearing which violated due process and "irreparably tainted" all proceedings which followed. The record indicates that on August 29, 1974, the hearing in question was held before a Judge of the local court on the father's petition for a temporary order of custody. During this hearing, the father's counsel informed the court that the mother's counsel had been notified of the father's intent to apply for the temporary custody order but that such opposing counsel was, at the time of the request, out of town on a previously planned trip. Therefore, it was requested that the court treat the matter as it would a request for an ex parte injunction and schedule a full hearing on the request for custody within a few days when the mother's counsel was to again be in the city and available.

Under such circumstances, the lower court, proceeding ex parte, heard evidence which it believed justified an

Order of temporary custody to the father.[1] On September 3, 1974, a full hearing was held on the father's custody request. Both parties were present with counsel and an agreement was reached by all concerned that, *inter alia*, the status quo with custody would be maintained and that the evidence adduced at both the August 29, 1974 and September 3, 1974 hearings would not be used in further proceedings to be held before another judge, then yet to be assigned, on the father's petition for permanent custody.

In view of the full hearing held on September 3, 1974 and the lengthy hearings held subsequent to that date in this case, and especially in light of the positions taken by the parties on September 3, 1974, relative to the earlier ex parte hearing, we find no basis for reversal as a result of the August 29, 1974 hearing. It had no effect on later proceedings, was followed by a full and fair hearing only days later, and did not result in any denial of due process to the mother.

Next, the mother objects to the testimony offered by a psychiatrist who had treated her in the past. We deem it unnecessary to discuss the complicated issues, including patient-client privilege, presented by the admission of such testimony, for it is not disputed that the trial judge later struck such testimony from the record. In view of such circumstance the issue appears moot as there was no jury and we do not believe from our review of the total record that the trial judge was in any way prejudiced by hearing such evidence.

Appellant mother next contends that lower court proceedings should be vitiated since it was required that separate counsel be provided for the minor son who was the subject of the custody litigation. In making such argument reliance is placed upon the case of *Stapleton v.*

1. The court's temporary *Order* is not challenged. Only the *occurrence* of the ex parte hearing is raised as an event requiring reversal.

*Dauphin County Child Care Service,* 228 Pa.Super. 371, 324 A.2d 562 (1974). *Stapleton, id.,* and other cases [2] discussing the child's right to counsel have all involved proceedings under the Juvenile Act of Dec. 6, 1972, P.L. 1464, No. 333, § 1 *et seq.,* 11 P.S. § 50–101 *et seq.* Under that Act, juveniles, inter alia, may be determined to be delinquent or deprived and may be removed from their natural parents. Counsel is an entitlement in such proceedings as mandated by Section 20 of the Act. (See 11 P.S. § 50–317). We cannot agree with the argument that counsel was a requirement in the instant circumstances, however, involving a custody dispute between natural parents. No compelling reasons have been advanced which convince us that, henceforth, counsel should be required for each child in every custody case in our Commonwealth, other than proceedings under the Juvenile Act. We also note that in the instant case, the trial court took great pains to determine the true wishes of the child, through his testimony in court and also transcribed discussions and testimony in chambers, with all counsel present.

The appellant mother raises several other claims which essentially involve the basic contention that the award of custody to the father was in error. We cannot agree. The trial court took great care to assure that both parents were given a liberal opportunity to present their evidence. The desires of the child were considered. Following a painstaking and detailed review of all factors,[3] the trial court concluded that it would be in the best interests of the child to award custody of the child to the father with provisions for visitation by the child with the mother. After a thorough review of the whole record, we are also convinced that the welfare of the child,

2. See also *In the Interest of James and John LaRue,* 244 Pa.Super. 218, 366 A.2d 1271 (1976); *In the Interest of Stephanie Clouse,* 244 Pa.Super. 396, 368 A.2d 780 (1976).

3. Such is evident from the excellent Opinion of the trial court.

which is the paramount consideration,[4] would best be served by placing primary custody with the father.

The Opinion of the lower court fully and adequately sets forth all the pertinent facts developed at the hearing concerning the parents. A regurgitation of such matters in this Opinion would serve no useful purpose. However, we note that certain factors involving the mother's treatment of her son and her conduct in his presence convince us that the welfare of the child would be better served by maintaining custody with the father in the stable homelife he can obviously provide. More specifically, and while not finding the mother an unfit parent, we were especially troubled by the mother's conduct in repeatedly physically punishing her son at the slightest provocation or, in many cases, without provocation. Also we have concern with the mother's habit of appearing in various stages of undress before her son and his playmates, despite both his repeated requests that she not engage in such conduct and her knowledge that he was troubled by this activity. Last, it is obvious that the mother constantly and viciously vilifies the boy's father, the father's second wife, and other relatives such as the paternal grandparents, in her discussions with her son. All of these actions and the record as a whole convince us that, especially at his present impressionable age, the interests of the boy would best be served by having him live with his father.

As hereinbefore discussed, the father is also an appellant from the Order of the lower court. His appeal, at No. 279 October Term, 1976, questions the propriety of the parts of the lower court order requiring him to pay support during periods of visitation of the son with the mother and also the command that he provide transportation to the child to and from such visits.

4. See *In re: Russo*, 237 Pa.Super. 80, 346 A.2d 355 (1975).

 With regard to support, the record shows that the father was ordered to make the following payments when the son is on a visitation with the mother :

A) The sum of Four Hundred Dollars ($400.00) for the one-month summer vacation when the child is with the mother;

B) Fifty Dollars ($50.00) for each alternate weekend when the child is with the mother;

C) Fifteen Dollars ($15.00) per day for each holiday when the child is with the mother.

In reviewing an Order of Support which is challenged, our Court has the power to look not only to the actual earnings of the parties, but also the earning power and nature and extent of property and other financial resources of the parties. *Shuster v. Shuster*, 226 Pa.Super. 542, 323 A.2d 760 (1974). However, we have noted many times that we will not disturb the Order of support issued by the trial court except in cases where there is a clear abuse of discretion or unless the Order is based upon a misinterpretation of law. *Commonwealth ex rel. Loosley v. Loosley*, 236 Pa.Super. 389, 345 A.2d 721 (1975); *Commonwealth ex rel. Collins v. Collins*, 232 Pa.Super. 105, 331 A.2d 675 (1974); *Commonwealth ex rel. Halderman v. Halderman*, 230 Pa.Super. 125, 326 A. 2d 908 (1974). Convincing evidence is required to show an abuse of discretion mandating reversal. *Commonwealth ex rel. Halderman v. Halderman, Id.* In the instant case, the mother and father each had a substantial net worth. The mother however, had no steady income from work, while the father was enjoying receipts of approximately seventy thousand dollars ($70,000.00) a year. We find no abuse of discretion in the support award in the instant case.

 As to the Order requiring the father to provide transportation for his son on visitations to the mother, we again find no abuse of discretion. It is clear that one

of the parents would have to provide such transportation. We find it noteworthy that there are references in the record, by the father, to the alleged poor driving habits of the mother. The Order for transportation by the father was proper, and not an abuse of discretion.

Affirmed.

HOFFMAN and SPAETH, JJ., did not participate in the consideration or decision of this case.