421 A.2d 157

**Eugene K. ALBRIGHT and Reba Albright, Appellants,**

**v.**

**COMMONWEALTH of Pennsylvania ex rel. Clark Lincoln FETTERS and Theodore Leroy Fetters, Appellees.**

Supreme Court of Pennsylvania.

Argued May 22, 1980.

Decided Sept. 22, 1980.

Jack M. Hartman, Harrisburg, for appellants.

Robert E. Campbell, Gettysburg, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

NIX, Justice.

This is an appeal from an order of the Superior Court reversing a custody award entered in favor of the maternal grandparents by the hearing court. The Superior Court ruled that custody should be awarded to the natural father and remanded the cause to the trial court to set appropriate visitation rights for the grandparents. The grandparents sought review which was granted by this Court and for the reasons that follow, we now reverse the order of the Superior Court, 266 Pa.Super. 583, 405 A.2d 1260, and reinstate the hearing court's order.

This appeals involves a dispute over the custody of two minor children, Clark Lincoln Fetters and Theodore Leroy Fetters. Clark Fetters was born September 10, 1963, to Kenneth and Suzanna Fetters. Kenneth is the appellee herein. When Clark was four years of age, his parents separated and his father took him to live with his maternal grandparents, Eugene K. and Reba Albright, appellants herein. Shortly thereafter, the parents reconciled and on June 8, 1968, Theodore Leroy was born. The marital relationship terminated after Theodore's birth and their father entrusted the children to the care of their maternal grandparents, where they remained for the next four years. Theodore resided with his grandparents from birth.

In 1972, the mother was given permanent custody of the boys with visiting privileges awarded to the father. In the interim, the mother remarried and a third son, Andrew,

resulted from that union. That marriage also terminated by divorce. From 1972 until the summer of 1978, the three boys lived together with their mother on weekdays during the winter. The grandparents kept the children every summer and three out of every four weekends during the remaining months. One weekend each month, Clark and Theodore stayed with their father who also had remarried.

In the beginning of the summer of 1978, the mother left the three boys with their grandparents for their usual summer visit. On June 28, 1978, the mother died. The children have remained with their grandparents since the death of the mother. On July 12, 1978, the father sought custody of his two sons in the Court of Common Pleas of Adams County. As previously stated, that court, after hearing, awarded custody to the maternal grandparents. The Superior Court reversed that order and directed that custody be awarded to the father.

The resolution of the questions presented in this appeal is dependent upon a determination of the proper standard to be applied in such cases. Both the hearing court and the Superior Court asserted that they were proceeding in accordance with the principle that where the custody dispute is between a parent and a third party, the parent has a prima facie right to custody, which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to the third party. The different results reached by these two tribunals, ostensibly using the same standard, evidences the need for further reiteration of that standard. The precise question raised is what is the full effect of the result of the parent's prima facie right to custody.

■ At the outset, it must be emphasized that the cardinal concern in all custody cases is the best interest and permanent welfare of the child. *Commonwealth ex rel. Bendrick v. White*, 403 Pa. 55, 169 A.2d 69 (1961); *Cochran Appeal*, 394 Pa. 162, 145 A.2d 857 (1958); *Commonwealth ex rel. Graham v. Graham*, 367 Pa. 553, 80 A.2d 829 (1951); *Commonwealth ex rel. Rogers v. Daven*, 298 Pa. 416, 148 A. 524 (1929); *In re Custody of Neal*, 260 Pa.Super. 151, 393 A.2d

1057 (1978); *In re Leskovich*, 253 Pa.Super. 349, 385 A.2d 373 (1978); *Smith v. Smith*, 246 Pa.Super. 607, 371 A.2d 998 (1977); *Scott v. Scott*, 240 Pa.Super. 65, 368 A.2d 288 (1976); *Brown v. Brown*, 206 Pa.Super. 439, 213 A.2d 395 (1965); *Hixon's Appeal*, 145 Pa.Super. 33, 20 A.2d 925 (1941). We have traditionally embraced the view that the scope of review to be applied by appellate courts in custody cases is very broad. *Commonwealth ex rel. Holschuh v. Holland–Moritz*, 448 Pa. 437, 292 A.2d 380 (1972); *Commonwealth ex rel. Bendrick v. White, supra; Ciammaichella Appeal*, 369 Pa. 278, 85 A.2d 406 (1952); *Commonwealth ex rel. Children's Aid Society, Guardian v. Gard*, 362 Pa. 85, 66 A.2d 300 (1949); *In re Custody of Neal, supra; Smith v. Smith, supra; Commonwealth ex rel. Ulmer v. Ulmer*, 231 Pa.Super. 144, 331 A.2d 665 (1974); *Johnson v. Pinder*, 217 Pa.Super. 180, 269 A.2d 511 (1970); *Commonwealth ex rel. Gifford v. Miller*, 213 Pa.Super. 269, 248 A.2d 63 (1968); *Commonwealth ex rel. Williams v. Price*, 167 Pa.Super. 57, 74 A.2d 668 (1950); *Commonwealth ex rel. Lewis v. Tracy*, 155 Pa.Super. 257, 38 A.2d 405 (1944). Nonetheless, a broad scope of review should not be construed as providing the reviewing tribunal with a license to nullify the factfinding functions of the court of the first instance. *Commonwealth ex rel. Bendrick v. White, supra; Commonwealth ex rel. Harry v. Eastridge*, 374 Pa. 172, 97 A.2d 350 (1953); *Commonwealth ex rel. Bowser v. Bowser*, 224 Pa.Super. 1, 302 A.2d 450 (1973); *Clair Appeal*, 219 Pa.Super. 436, 281 A.2d 726 (1971); *Commonwealth ex rel. Doberstein v. Doberstein*, 201 Pa.Super. 102, 192 A.2d 154 (1963); *Commonwealth ex rel. Urbani v. Bates*, 186 Pa.Super. 77, 140 A.2d 638 (1958); *Commonwealth ex rel. Knouse v. Knouse*, 146 Pa.Super. 396, 22 A.2d 618 (1941); *Commonwealth ex rel. Bentley v. Bentley*, 108 Pa.Super. 132, 165 A. 44 (1933); *Commonwealth ex rel. Witte v. Witte*, 80 Pa.Super. 397 (1923).

Prior case law has variously attempted to articulate the burden to be placed upon the third party in a dispute over custody with a parent. Some cases have expressed the standard in terms of a parent possessing a "primary right to the custody of the child." *Commonwealth ex rel. Bradley v.*

*Bradley,* 188 Pa.Super. 108, 146 A.2d 147 (1958); *Commonwealth ex rel. Galloway v. Galloway,* 188 Pa.Super. 313, 146 A.2d 383 (1958); *Commonwealth ex rel. Kraus v. Kraus,* 185 Pa.Super. 167, 138 A.2d 225 (1958); *Commonwealth ex rel. Shroad v. Smith,* 180 Pa.Super. 445, 119 A.2d 620 (1956). This formulation has been appropriately criticized because the expression "primary right" connotes a type of property interest possessed by the parent in the child. *See In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977). As we recently noted in *Ellerbe v. Hooks,* 490 Pa. 363, 369, 416 A.2d 512, 514 (1980):

> " . . . , deference to the parental relationship is not an archaic adherence to any property rights theory of the family."

Whatever weight that is to be given in the decision based upon the parent–child relationship can only be justified upon the ground that parenthood "has traditionally served and continues to serve as our society's fundamental criterion for allocating control over and responsibility for our children. . . ." *Ellerbe v. Hooks,* 490 Pa. at 369, 416 A.2d at 514.

■ Most recently this Court has had occasion to adopt the standard set forth by the Superior Court in *In re Hernandez, supra; Ellerbe v. Hooks, supra.* In holding that parents have a "prima facie right to custody," we explained that standard as providing for:

> " . . . simply instruct the hearing judge that the non–parent bears the burden of production and the burden of persuasion and that the non–parent's burden is heavy." *Ellerbe v. Hooks,* 490 Pa. p. 368, 416 A.2d p. 514.[1]

However, we made it clear that there was no intention in adopting this formulation to suggest that parenthood alone

---

1. The *Hernandez* Court also took issue with those decisions that formulated the standard in terms of a presumption in favor of a parent. *Commonwealth ex rel. Bendrick v. White,* 403 Pa. 55, 169 A.2d 69 (1961); *Auman v. Eash,* 228 Pa.Super. 242, 323 A.2d 94 (1974); *Commonwealth ex rel. Bifford v. Miller,* 213 Pa.Super. 269, 248 A.2d 63 (1968); *Commonwealth ex rel. Galloway v. Galloway,* 188 Pa.Super. 313, 146 A.2d 383 (1958). This objection is probably nothing more than a semantic quibble. "Prima facie" is in reality nothing more than a procedural device which assigns the burden of

would necessarily defeat the claim of custody of a non–parent. "Clearly these principles do not preclude an award of custody to the non–parent." *Ellerbe v. Hooks*, 490 Pa. 368, 416 A.2d 514. A contrary view would ignore clear legislative intention otherwise. For instance, the legislature has set forth standards where the state may remove a child from the custody of a parent, *Juvenile Act*, P.L. 586, 42 Pa.C.S. § 6301 *et seq.* (1978); *Child Protective Services Law*, P.L. 438, 11 P.S. § 2201 *et seq.* (1975), and even permits the termination of the parental relationship under defined circumstances, *Act of July 24, 1970*, P.L. 620, No. 208, Art. I, § 101, 1 P.S. § 101 *et seq.* (1971).

Thus the *Hernandez* standard, adopted by this Court in *Ellerbe*, was in tended to emphasize the importance of the maintenance of the parental relationship, yet at the same time permit the hearing court to award custody to the third party where the best interests of the child will be clearly served by such a decision. This point is best demonstrated by the fact that this Court in *Ellerbe*, after embracing the *Hernandez* standard, applied it and sustained the decision of the hearing court awarding custody to the maternal grandmother. *Ellerbe v. Hooks, supra.*[2]

■ In this case, the hearing court after conceding that the father had entered into an apparently stable second

proceeding with the evidence. A fact presumed to be true unless disproved by some evidence to the contrary. *Mineo v. Eureka Sec. F. & M. Ins. Co.*, 182 Pa.Super. 75, 125 A.2d 612 (1956); *Beckman v. Brownback*, 341 Pa. 565, 20 A.2d 200 (1941); *Johnson v. State*, 258 Ind. 648, 283 N.E.2d 532 (1972); *Dal. Int'l. Trading Co. v. The Milton J. Foreman*, 171 F.Supp. 794, (E.D.N.Y.1959); *Detig v. Kelley*, 17 Ill.App.2d 496, 150 N.E.2d 845 (1958); *Herbert v. Whims*, 68 Ohio App. 39, 38 N.E.2d 596 (1941); Black's Law Dictionary 1353 (Rev. 4th ed. 1968). The real questions are the quality and quantity of evidence required to overturn the presumption. It is doubtful whether either term, i. e., "presumption" or "prima facie" is particularly helpful in this regard.

2. Similar to the procedural posture of this case the Superior Court in *Ellerbe* had reversed the hearing court's award of custody to the maternal grandmother and directed that custody be given to the father.

marriage and could provide a good home, nevertheless concluded that the maternal grandparents had presented sufficiently compelling reasons to justify the award of custody to them. Those factors which were deemed to be persuasive were that the children had been exposed to chaotic conditions throughout their lives as a result of the marital difficulties between the parents and that the home of the grandparents had proven to be the single stabilizing factor in their lives.[3] In *Ellerbe*, we held that the removal of a child from a secure and familiar environment was the type of factor that could justify the award of the child to a grandparent over the claim of a parent. *Ellerbe v. Hooks, supra.* The adverse effect upon the development of youngsters caused by the disruption of an established stable relationship has been well recognized in this area of the law. *Gunter v. Gunter*, 240 Pa.Super. 382, 399, 361 A.2d 307, 316 (1976).

In addition to the problem of separation trauma, the court also was troubled by the fact that granting custody of the two sons to their father would prevent the siblings from being raised together.[4] It has always been a strong policy in our law that in the absence of compelling reasons to the contrary, siblings should be raised together whenever possible. *Tomlinson v. Tomlinson*, 248 Pa.Super. 196, 374 A.2d 1386 (1977); *Commonwealth ex rel. Steuer v. Steuer*, 244 Pa.Super. 302, 368 A.2d 732 (1976); *In re Custody of*

---

3. The significance of this factor in this case was highlighted by the testimony of the older child who expressed great concern at the prospect of his brother and he being uprooted again.

4. The three children can benefit greatly from a joint upbringing. Clark Fetters, the oldest of the three children, who was fourteen years old at the time of the hearing, expressed serious concern for what would happen to his youngest brother if he became separated from his older brothers.

Clark also expressed a well–articulated preference to remain with his grandparents. The preference of the child is one factor to be considered in awarding custody. The weight to be accorded such preference varies according to age, intelligence and maturity of the child. *Commonwealth ex rel. Bankert v. Children's Services*, 224 Pa.Super. 556, 307 A.2d 411 (1973). Clark Fetters, the trial judge noted was "a reasonable and intelligent young man and the Court was impressed with his views."

*Myers,* 242 Pa.Super. 225, 363 A.2d 1242 (1976); *Commonwealth ex rel. Bowser v. Bowser,* 224 Pa.Super. 1, 302 A.2d 450 (1973); *Commonwealth ex rel. Sissel v. Sciulli,* 216 Pa.Super. 429, 268 A.2d 165 (1970); *Commonwealth ex rel. Martino v. Blough,* 201 Pa.Super. 346, 191 A.2d 918 (1963); *Commonwealth ex rel. Johnson v. Johnson,* 195 Pa.Super. 262, 171 A.2d 627 (1961); *Commonwealth ex rel. Reese v. Mellors,* 152 Pa.Super. 596, 33 A.2d 516 (1943). This principle is in no way diluted by the fact that the third child in this case is a half brother. The benefits to be derived from the three minors being raised in the same household provided a further factor that could properly be weighed against the parent's claim for custody. Thus, in view of these countervailing factors, we cannot agree with the Superior Court's conclusion that the hearing court misapplied the standard in awarding custody to the grandparents.

■ Finally, a reference to an implicit misperception in the Superior Court's reasoning is required. That court framed the issue in terms of the absence of any evidence "that the father has forfeited his prima facie right to custody of his sons, . . ." 266 Pa.Super. 583, 586, 405 A.2d 1260, 1262. Such a formulation tends to focus the inquiry on the respective rights of the contesting parties whereas the real issue is the best interest of the children involved. Restated, the standard in this area is not to be construed as precluding a custody award to a non–parent, absent a demonstration of the parent's dereliction. We again emphasize that the standard seeks only to stress the importance of parenthood as a factor in determining the best interests of the child. However, other factors which have significant impact on the well being of the child can justify a finding in favor of the non–parent, even though the parent has not been shown to have been unfit.

Accordingly, the order of the Superior Court is reversed and the order of the Court of Common Pleas awarding custody to the maternal grandparents is reinstated.

FLAHERTY, J., joins the opinion and filed a separate concurring opinion.

LARSEN, J., concurred in the result.

FLAHERTY, Justice, concurring.

I join, and make reference to the Concurring Opinion which I authored in *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512 (1980). It is safe to say that the law of this Commonwealth has now advanced to the point where we truly have an unbeclouded standard in custody cases which serves, "... the *child's interests*, including physical, emotional, intellectual, moral and spiritual well being." (Emphasis supplied.)