J-A22025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| D.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| L.D | |
| APPEAL OF: D.D. & D.D. | No. 426 MDA 2015 |

Appeal from the Order Entered February 25, 2015
In the Court of Common Pleas of York County
Civil Division at No(s): 2009-FC-002198-03
2011-FC-001241-03

BEFORE: BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED AUGUST 28, 2015**

Appellants D.D. & D.D. ("Grandparents") appeal from the order entered in the York County Court of Common Pleas awarding sole legal and primary physical custody of their daughter's child ("Child") to L.D. ("Father") and awarding Grandparents custody on alternating weekends. We affirm.

Child was born in March 2008. Mother and Child lived with Grandparents for Child's first year, at which time Mother and Child moved in with Maternal Great-Grandmother for about six months. N.T., 2/19/2015, at 84-85. Mother and Child then moved in with Mother's fiancé for about a year and a half. *Id.* at 85. Mother and Child then returned to Grandparents

_____

[*] Retired Senior Judge assigned to the Superior Court.

home. *Id.* Mother and Child moved back in with Great Grandmother, before returning to live with Grandparents in the summer of 2012. *Id.* at 85, 87. They remained with Grandparents until Mother died of a drug overdose on August 30, 2014.[1] *Id.* at 85, 87.

On February 19, 2010, the trial court issued a stipulated custody order, which provided Mother with primary physical custody and Father with partial physical custody every other week from Wednesday at 9:30 a.m. until Friday at 2:00 p.m.[2] The parties shared legal custody. In September, 2012, after Mother was arrested for heroin offenses, Father filed a Petition for Special Relief and Petition to Modify Custody.[3] On September 18, 2012, the trial court granted Father's petition for special relief and awarded Father sole legal and physical custody of Child.

Grandparents then sought primary physical custody of Child. On March 1, 2013, the trial court issued an order providing for shared physical custody between Mother and Father. Mother had custody from Thursday at

---

[1] The exact time periods of Mother's time spent away from Grandparents' house varies in the testimony.

[2] In October, 2011, Grandparents were awarded visitation on every third weekend of the month.

[3] It appears Mother spent one to two nights in jail and entered drug court for the heroin offenses. She was incarcerated for 1 to 2 weeks for violating probation. N.T., 2/19/2015, at 86.

8:30 p.m. until Monday at 5:30 p.m. and Father had the remainder of the week.[4]  Grandparents received no custody rights.

On August 30, 2014, Mother passed away.  Father took custody of Child.  On September 19, 2014, Grandparents filed a petition to modify custody seeking sole legal and primary physical custody of Child.

On October 23, 2014, the trial court issued an interim custody order, providing Father with sole legal custody and primary physical custody of Child and awarding Grandparents custody on alternate weekends.

On February 27, 2015, following a February 19, 2015 custody trial, the trial court issued an opinion and final order for custody awarding Father sole legal and primary physical custody.  Grandparents were awarded custody on alternate weekends.

Grandparents filed a timely notice of appeal.  Both Grandparents and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant raises the following claims on appeal:

> A. Whether the trial court erred as a matter of law and committed a gross abuse of discretion in determining that neither party is more likely than the other to encourage and permit frequent and continuing contact between the child and the other party/parties where Father has shown

---

[4] Grandmother testified the parties did not follow this schedule after Child started school.  Rather Child was with Mother on weekdays and Father on weekends.  N.T., 2/19/2015, at 93.  She testified they changed it because Father was unable to transport Child to school during the week because he did not drive.  *Id.* at 93-94.  Father's house is within walking distance to Child's current school.

repeatedly that he has no respect for Grandparents' rights of custody?

B. Whether the trial court erred as a matter of law and committed a gross abuse of discretion in failing to integrate its finding of contempt against [F]ather in its best interests analysis?

C. Whether the trial court erred as a matter of law and committed a gross abuse of discretion in determining that [F]ather performed basic parental duties for [Child] during his custodial time?

D. Whether the trial court erred as a matter of law and committed a gross abuse of discretion in determining that stability and continuity in [Child's] education, family, and community life would be served by awarding physical custody to [F]ather where [] Child had lived primarily with Mother and Grandparents almost all of her life and attended school in their district for the year prior to Father be [sic] awarded primary custody?

E. Whether the trial court erred as a matter of law and committed a gross abuse of discretion in determining that the well-reasoned preference of [Child] only slightly favored Appellants where [C]hild clearly indicated her preference to remain with Grandparents and attend Wrightsville Elementary School?

F. Whether the trial court erred as a matter of law and committed a gross abuse of discretion in determining that each of the parties was likely to maintain a loving, stable, consistent and nurturing relationship with [Child] where the evidence clearly indicates that Father is not nurturing of [Child] and Grandmother is very nurturing?

G. Whether the trial court erred as a matter of law and committed a gross abuse of discretion in determining that Appellants would have a need for alternative child care arrangements which was any greater than arrangements needed by [F]ather?

H. Whether the trial court erred as a matter of law and committed a gross abuse of discretion in determining that the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another

favored [F]ather, especially in light of the expert testimony and report, as well as the testimony of the parties?

I. Whether the trial court erred as a matter of law and committed a gross abuse of discretion in determining it did not have the benefit of clear and convincing evidence that [Child's] best interests would be served by an award of primary physical custody to Appellants where there was uncontroverted opinion by an expert that Grandparents should be awarded primary custody?

Appellants' Brief at 4-6.

In a custody action "between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence." 23 Pa.C.S. § 5327(b). The "burden of proof and of persuasion is on the non-parent, and that burden is heavy." **E.A.L. v. L.J.W.**, 662 A.2d 1109, 1113 (Pa.Super.1995) (quoting **Ellerbe v. Hooks**, 416 A.2d 512 (Pa.1980)). The court, however, "may award custody to a third party 'where the best interests of the child will be clearly served by such a decision.'" **Id.** (quoting **Albright v. Commonwealth ex rel. Fetters**, 421 A.2d 157, 160 (Pa.1980)).

"The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." **V.B. v. J.E.B.**, 55 A.3d 1193, 1199 (Pa.Super.2012) (quoting **In re B.C.**, 36 A.3d 601, 605–606 (Pa.Super.2012)).

This Court has stated:

What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side.

*V.B.*, 55 A.3d at 1199 (quoting *McDonel v. Sohn*, 762 A.2d 1101, 1107

(Pa.Super.2000)). Further,

> [O]ur Supreme Court noted that "these principles do not preclude an award of custody to the non-parent. Rather they simply instruct the hearing judge that the non-parent bears the burden of production and the burden of persuasion and that the non-parent's burden is heavy." Essentially, the Supreme Court determined, "where circumstances do not clearly indicate the appropriateness of awarding custody to a non-parent, we believe the less intrusive and hence the proper course is to award custody to the parent or parents."

*Id.* (quoting *Ellerbe*, 416 A.2d at 514).

When addressing custody issues:

> [T]he court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.

This Court's standard of review is:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must

accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**V.B.**, 55 A.3d at 1197 (Pa.Super.2012) (quoting **A.D. v. M.A.B.,** 989 A.2d 32, 35–36 (Pa.Super.2010)).

Here, the trial court discussed the best-interest factors as follows:

The first inquiry the [c]ourt must make is which party is more likely to encourage and permit frequent and continuing contact between the child and the other party. Dr. Thomas's report reflects that Father is uncomfortable with the thought of Maternal Grandparents having any rights to custody which exceed one weekend per month. Pl.s Ex. 6, at 20. Father exhibited his disdain for sharing custody in his own testimony. However, in the brief time since Mother's passing, the parties have had one incident involving a custody exchange, which could have been handled better by Maternal Grandparents. Following the [p]retrial [c]onference, this [c]ourt ordered an exchange during the holidays to occur at 2 p.m., but Father was under the understanding that the pickup was to occur at the regularly scheduled time of 5 p.m. When Father arrived to pick up [Child], Maternal Grandparents refused to exchange custody because Father was late with no notification. While Maternal Grandparents were technically correct, they could have been more flexible given that it appears that Father made an honest mistake as to the pick-up time. Therefore, based on the history of the parties and the reluctance on both sides to permit frequent and continuing contact, the [c]ourt finds that this factor is

neutral and that both parties need to improve in this regard.

The second consideration is present or past abuse committed by either party or a member of a party's household and whether there is a continued risk of harm to the child. Because there is no history of abuse by either party, the [c]ourt finds that this factor favors neither party.

The third factor that the [c]ourt must consider is the parental duties performed by each party on behalf of the child. Both parties perform basic parental duties for [Child] during their custodial time. The [c]ourt therefore finds that this factor favors neither party.

The next factor for consideration is the need for stability and continuity in the child's education, family life, and community life. [Child] has undoubtedly experienced substantial change in the past year. Despite this, she has been doing well in school and at home. Father has had primary custody since Mother's passing, but Mother previously had primary custody while living with Maternal Grandparents. Given that [Child] is doing well under the current schedule, this factor slightly favors Father.

The [c]ourt must next consider the availability of extended family and the child's sibling relationships. Both parties have extended family in the general area, and [Child] has no siblings. These factors favor neither party.

The next factor to consider is the well-reasoned preference of the child, based on the child's maturity and judgment. [Child] expressed a desire to attend her old school - Wrightsville Elementary, which she attended while living with Mother and Maternal Grandparents - because she had more friends there. This is corroborated by Dr. Thomas's report. *See* Pl.'s Ex. 6, at 23. [Child] also stated that she had some friends at her new school and enjoyed it as well. Based on [Child's] age and maturity, the [c]ourt finds that this factor weighs slightly in favor of Maternal Grandparents.

The next factor to be considered is any attempts of a parent to turn the child against the other parent, except in

cases of domestic violence. As neither party expressed concern, this factor is neutral.

Next, the [c]ourt must consider which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs. Both parties clearly want the best for [Child], and each party believes that their home provides the more stable, consistent, and nurturing environment. The [c]ourt does not find that this factor favors either party.

The next consideration is which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the child. Both parties properly care for [Child] during their custodial time, and both parties have taken steps to aid in [Child's] emotional development in the past year. At the time of Dr. Thomas's evaluation and again at the time of trial, [Child] exhibited significant attachment to Maternal Grandmother. Given [Child's] significant emotional needs since Mother's death and the Maternal Grandparents' resources and relationship with her to help meet those needs, the [c]ourt finds that this factor favors Maternal Grandparents.

Next, the [c]ourt must consider the proximity of the residences of the parties. The parties reside approximately 20-30 minutes apart, so this factor is not significant to [Child's] best interests.

The next enumerated factor is each party's availability to care for the child or ability to make appropriate child-care arrangements. Father lives with Paternal Grandmother, who testified that she is always available for childcare. Maternal Grandparents testified that they should always be available to care for [Child] during their custodial time. However, due to Maternal Grandparents' irregular work schedules, there is the potential for the need for alternative childcare arrangements. Therefore, the [c]ourt finds that this factor slightly favors Father, but is not significant to [Child's] best interests.

The [c]ourt must next consider the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. Each party testified to the significant level of conflict between Father and

- 10 -

Maternal Grandparents. Dr. Thomas's report and testimony suggest that Father is "likely to be stress reactive and worry prone," and that he is vulnerable to "being suspicious of and mistrustful of others." Pl.'s Ex. 6, at 18. The [c]ourt believes that this aspect of Father's personality has a substantial negative impact on the parties' ability to communicate and cooperate. However, Maternal Grandparents find difficulty in communicating effectively with Father, as well. Maternal Grandparents clearly do not like Father and have shown hostility towards him. It has long been held that hostility between parents and grandparents could lead to "devastating consequences" for the child, and the existence of such animosity is sufficient to deny partial custody to the grandparents without a showing that actual harm to the child has already resulted. *Zaffarano* **v**. *Genaro*, 455 A.2d 1180 (Pa.1983); *Wick v. Wick*, 403 A.2d 115 (Pa.Super.1979). This factor therefore favors Father.

The [c]ourt must also address any history of drug or alcohol abuse by a party or a member of a party's household. Because neither party has a known history of drug or alcohol abuse, the [c]ourt finds that this factor is neutral.

The [c]ourt must also consider the mental and physical condition of a party or member of a party's household. Because there are no known physical or mental conditions relevant to the best interests of [Child], this factor is neutral.

The next factor is any Children, Youth, and Families involvement with the case. There is no history of involvement with CYF, and therefore this factor is also neutral.

Lastly, the [c]ourt must consider any other relevant issue. Two relevant issues work to the Maternal Grandparents' favor: [Child] resided with Maternal Grandparents for four out of the previous six years of her life, and she has developed a strong emotional attachment to them. Additionally, Father does not have a driver's license, which may make a shared arrangement more difficult.

While the [c]ourt finds Dr. Thomas's report and testimony to be highly credible and the factors to weigh somewhat in

Maternal Grandparents' favor, the [c]ourt does not have the benefit of clear and convincing evidence that [Child's] best interests will be served by an award of primary custody to Maternal Grandparents. Therefore, the [c]ourt grants Father sole legal and primary physical custody of [Child]. Maternal Grandparents will be awarded significant rights of partial physical custody, given [Child's] strong emotional attachment to Maternal Grandparents, Maternal Grandparents' greater resources, the unlikelihood of Father fostering a relationship between [Child] and Maternal Grandparents, and the expressed desire of [Child] to see all of the parties. The [c]ourt believes that it is in [Child's] best interests for Maternal Grandparents to exercise physical custody on alternate weekends and for half of the summer months. An [o]rder will be entered in conformance with this [o]pinion.

Opinion, 2/27/2015, at 3-6.

Grandparents first challenge the trial court's determination that neither party is more likely than the other to encourage and permit frequent and continuing contact between Child and the other party. Appellants' Brief at 15-16. At the hearing, the trial court received the following evidence: Father did not wish to share custody with Grandparents; Grandparents refused Father his custody period when he mistakenly arrived three hours late; and Father withheld Child on Grandparents' weekend, as he missed his prior custody period. *See* Peter H. Thomas, Ph.D., Psychological Evaluation for Child Custody, at 20 (Father did not want to share custody with Grandparents); N.T., 2/19/2015, at 174-77 (when Father mistakenly believed exchange time was 5:00, rather than 2:00, and arrived for the exchange at 5:00, Grandparents refused to allow him his time); N.T., 2/19/2015, at 115-16 (Father did not permit Grandparents to take custody

of Child for weekend); Opinion, 2/25/2015, at 8-9 (Father withheld custody to make up for the time he lost when Grandparents withheld custody). The trial court acted within its discretion in finding this factor favored neither party.

Grandparents next claim the trial court abused its discretion when it failed to integrate its finding of contempt against Father into its best interest analysis. Appellants' Brief at 16. Regarding the contempt finding, the trial court found:

> With respect to the petition for contempt, the [c]ourt finds that Father did violate the [o]rder dated October 23, 2014, by withholding custody during Maternal Grandparents' custodial time to make up for the time that he lost when Maternal Grandparents withheld custody during the holidays. Although, as mentioned, Maternal Grandparents' withholding of custody was not a violation of the [o]rder, it was a display of unwillingness to cooperate with Father. Given the forgoing, the [c]ourt will not impose any sanctions for Father's violation of the [o]rder.

Opinion, 2/15/2015, at 8. The trial court viewed Father's non-compliance as a violation of the order, but also noted Grandparents showed an unwillingness to cooperate with Father and it chose to not sanction Father. Given the circumstances of the violation, the trial court did not err by not expressly considering this violation in its analysis.

Grandparents' third issue claims the trial court erred when it determined Father performed basic parental duties for Child. Appellants' Brief at 16-17. Grandparents focus on Father's "historical lack of involvement with [Child]." Appellants' Brief at 17. Although Father was

absent when Child was an infant, he has had at least partial custody since 2010, and has had shared or primary custody since September of 2012. Further, contrary to Grandparents' contentions, Father has taken Child to the doctor, dentist, and eye doctor. N.T., 2/19/2015, at 248-49. There was no evidence Father did not properly care for Child. The trial court did not err in finding both Father and Grandparents perform basic parental needs.

Grandparents next contend the trial court erred when it found that stability and continuity in Child's education, family, and community life would be served by awarding physical custody to Father. Appellants' Brief at 18. Grandparents analogize this case to **Albright v. Commonwealth ex rel. Fetters**, 421 A.2d 157 (Pa.1980) and **Ellerbe v. Hooks**, 416 A.2d 512, 513 (Pa.1980). In **Albright**, after their parents' divorce, the two minor children lived with their grandparents for four years. After that time, they lived with their mother and their half-brother on weekdays, and visited Father one weekend a month. They spent every summer with the grandparents as well as three out of every four weekends during the winter. After their mother passed away they remained with the grandparents. The trial court awarded custody to the grandparents, not the father, reasoning the children had been in chaotic conditions throughout their lives and the grandparents' home "had proven to be the single stabilizing factor in their lives" and custody with the father would separate the children from their stepbrother. **Id.** at 160.

In ***Ellerbe***, the Supreme Court of Pennsylvania found the trial court did not err in awarding custody to the grandmother where "[child], then eleven years old, had been living with her grandmother since she was less than two years old. [Child] had developed stable and happy relationships with her grandmother, with neighborhood friends and, importantly, at school." 416 A.2d at 515.

Unlike ***Albright*** and ***Ellerbe***, Father has had at least partial custody of Child since 2010, and has had shared or primary custody since 2012. Although Grandparents had visitation rights prior to Mother's death, they never had custody of Child. Rather, when Child resided with Grandparents, Mother also resided with them. The trial court did not err in finding this factor favored Father.

Grandparents' fifth claim alleges the trial court erred when it determined the well-reasoned preference of Child only slightly favored Grandparents. Appellants' Brief at 21-22. The trial court found:

> [Child] expressed a desire to attend her old school - Wrightsville Elementary, which she attended while living with Mother and Maternal Grandparents - because she had more friends there. This is corroborated by Dr. Thomas's report. ***See*** Pl.'s Ex. 6, at 23. [Child] also stated that she had some friends at her new school and enjoyed it as well. Based on [Child's] age and maturity, the [c]ourt finds that this factor weighs slightly in favor of Maternal Grandparents.

Opinion, 2/27/2015, at 5. The trial court did not err. The trial court considered Child's testimony, which focused on her preference for her prior

elementary school, but noted that "[b]ased on [Child's] age and maturity, . . . this factor weighs slightly in favor of [Grandparents]."

Grandparents' sixth claim maintains the trial court erred in determining both parties were likely to maintain a loving, stable, consistent, and nurturing relationship with Child. Appellants' Brief at 22-23. Based on the testimony presented, including Father's and Child's testimony, the trial court did not err. Grandparents rely on the expert report, which noted the expert observed no nurturing during the session. However, the session with Father was a half hour session, during which Father was answering questions. N.T., 2/19/2015, at 53, 222. Father testified he has a consistent job, and walks Child to and from school if weather permits, they play, he grocery shops for Child and cooks for her, and he helps Child with her homework. N.T., 2/19/2015, at 218, 233, 238, 246, 255-56. Child also testified that Father played with her. *Id.* at 68. Although Grandmother may be more nurturing, there is no indication Father does not provide a loving, stable, consistent, and nurturing relationship.

Grandparents' seventh claim is that the trial court erred when it found Grandparents would have a greater need for daycare than Father. Appellants' Brief at 24-25. The trial court found this factor slightly favored Father, as his mother was always available to care for Child, but it was "not significant to [Child's] best interest." Opinion, 2/27/2015, at 6. Therefore, the trial court did not give this factor any weight in the best interest analysis.

Grandparents' eighth claim asserts the trial court erred in finding the level of conflict between the parties and the willingness and ability of the parties to cooperate with each other favored Father. Appellants' Brief at 25. The trial court adequately addressed this issue, including that Father was vulnerable to "being suspicious and mistrustful" and Grandparents have shown hostility toward Father. *See* Opinion, 2/27/2015, at 7. The trial court acted within its discretion and did not err.

Grandparents' last issue claims the trial court erred when it did not find clear and convincing evidence that Child's best interest would be met by custody with Grandparents. Appellants' Brief at 28-29. Again, the trial court did not err. As outlined above, the trial court considered all factors, and all evidence and testimony presented. Grandparents had a heavy burden, clear and convincing evidence, which they failed to meet.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/2015