Commonwealth ex rel. Bradley, Appellant, *v.*
Bradley.

Argued September 11, 1958. Before RHODES, P. J.,
HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WAT-
KINS, JJ.

*Paul A. McGinley,* for appellant.

*E. G. Scoblionko,* with him *Scoblionko & Frank,* for
appellees.

OPINION BY WATKINS, J., November 14, 1958:

This is a habeas corpus action in the Court of Common Pleas of Lehigh County involving Gordon Bradley, the paternal grandfather, the relator appellant, Owen Bradley, the father, Athena Bradley Sousa, the mother, and Marguerite G. Trainer and Clarence Trainer, foster parents, the respondent appellees, for the custody of the minor child, Jon Allen Bradley. This appeal is from the judgment of the Court of Common Pleas of Lehigh County awarding custody to the foster parents.

Owen and Athena Bradley were married on November 4, 1946. Both were residents of Indiana. It was her third marriage. At the time Owen was 21 years of age, Athena 27. Jon was born August 22, 1948. They were separated on October 29, 1949 and divorced on the wife's complaint on February 20, 1950. Custody of Jon was awarded by the Indiana court to Mr. and Mrs. Gordon Bradley, the paternal grandparents with visitation provided to Athena Bradley.

Athena Bradley took the child from the Bradley home at Fort Wayne, Indiana and removed him to Liverpool, Ohio. Owen Bradley started proceedings to regain possession but before service, Athena left Liverpool and took the child to Bethlehem, Pennsylvania. In June of 1950 Athena placed the child in the Trainer home. She was to pay $7 a week for the child's support but only paid a total of $35 to the Trainers. None of the Bradleys knew of the whereabouts of Athena or the child until May of 1957 when they heard he was attending public school in Allentown.

Athena Bradley married Earl Sousa on May 23, 1954. This was her fourth marriage. They are both employed and own a comfortable home. They both expressed a willingness and a capacity to have Jon live with them but she indicated satisfaction with the pres-

ent custody status and testified as to the happiness of Jon at the Trainer's home. Owen Bradley remarried in June of 1950 and has four children by this marriage. He expressed a desire to obtain custody but was actually supporting the action of his father and mother.

Gordon Bradley is 60 years of age, his wife 57. He is in the real estate and insurance business in Fort Wayne, Indiana, a man of substance who has raised a family of six children. Clarence Trainer, Sr., is 57 years of age, his wife 48 years of age. He is a truck driver, earning between $5000 and $6000 Dollars per year. The Trainers own their own home and in addition to Jon, a thirty-three year old blind son, Clarence, Jr., lives with them. Jon has been with them since 1950 and at the time of the hearing was almost ten years old and about to complete the fourth grade in Allentown public schools.

"It is basic and fundamental that the paramount consideration is the welfare of the children and that all other considerations, including the rights of parents, are subordinate to the children's physical, intellectual, moral, spiritual and emotional well being." *Com. ex rel. McNamee v. Jackson*, 183 Pa. Superior Ct. 522, at page 525, 132 A. 2d 396 (1957).

"While natural parents have the primary right to a child's custody, there is no fixed and invariable rule that a natural parent, even though of good moral character, is entitled to custody under all circumstances. Each case must finally rest on and be determined by its own facts." *Com. ex rel. Kraus v. Kraus*, 185 Pa. Superior Ct. 167, 170, 138 A. 2d 225 (1958).

Here, however, the natural parents' position, both father and mother, is that of supporting, in the one case, the position of the grandparents, and in the other, the position of the foster parents. We agree with the court below, after a careful examination of the record

that the real contest in this case is between the Trainers and the Bradleys. Owen Bradley's position was in support of his parents and indicated what the court below characterized as a "halfhearted" desire on his part. On this record we do not believe that any consideration should be given to Athena Bradley Sousa. At any rate she is satisfied that the child is well and lovingly cared for by the Trainers and that he loves them very much.

We are, therefore, discussing a contest between grandparents and foster parents, where the child has been in the custody of the foster parents for eight years and is well adjusted in the existing family situation. See *Com. ex rel. Kraus v. Kraus,* supra. We are inclined to give great weight to the findings of Judge HENNINGER of the court below who had the opportunity of seeing and hearing the parties and the witnesses and therefore is in a much better position to pass upon their ability and character than we are in examining the cold record. *Com. ex rel. Knouse v. Knouse,* 146 Pa. Superior Ct. 396, 22 A. 2d 618 (1941).

He aptly states the problem in his opinion as follows:

"Since the passage of the Act of May 23, 1945, P. L. 864, 62 P.S. 1973, eliminating the grandparent as one legally responsible for a child's support, the reason for favoring the grandparent, as one having a legal right to custody, has ceased. Comm. ex rel. Barnett v. Currie, 165 Pa. Super. 477, 480; Comm. ex rel. Kuntz v. Stackhouse, 176 Pa. Super. 361, 367.

"The Gordon Bradleys and the Trainers stand, therefore, upon an equal footing before this Court. Other things being equal, we would still be inclined to favor the blood relative. But other things are not equal. We cannot overlook the eight (8) years of loving care, voluntarily and sacrificially bestowed on this

boy by the Trainers and the resultant bond of affection between them. We cannot overlook the fact that, although it is no fault of the Bradleys, Jon is a complete stranger to them. We cannot forget that the Trainers, when the promise of support failed, could have surrendered the child to the public authorities as an abandoned child, instead of expending their own earnings for his welfare through the years. Without placing undue emphasis on Jon's own expressed desire to remain with the Trainers, it is nevertheless an important factor psychologically in the life of a child. . . . We simply cannot hold ourselves responsible for the nervous shock this child would inevitably suffer if he were forcibly removed from the home of the only mother and father he has ever known."

Judge HENNINGER also disposed of the complaint of the appellant concerning the custody decree entered in the State of Indiana where he says, "We would not lightly ignore the considered judgment of a sister court, but with all due respect for the wisdom of the Indiana Courts, we feel that we are not bound legally or morally by their decree of custody in the Gordon Bradleys. The order was temporary—'until the further order of this court'—and it was given in the light of conditions existing eight years ago. A decision concerning an 18 months' old child made eight years ago could not be binding upon us in any event. Comm. ex rel. v. Daven, 298 Pa. 416, 419; Comm. ex rel. Schofield v. Schofield, 173 Pa. Super. 631, 637."

Our review of this record clearly establishes that Judge HENNINGER arrived at the judgment after a careful and sympathetic study and consideration of all the testimony and, as evidenced by his persuasive opinion, properly applied the principles of law so that his conclusion should not be disturbed.

Judgment affirmed.