## Conrad Adoption

*David J. Foster*, for petitioner.
*Philip A. Arnold*, for respondent.
*Ronald E. Johnson*, court-appointed, for minors.

SHUGHART, *P.J.*, August 30, 1978—Wayne Richard Conrad, III, born August 27, 1968, and Jonathan Wayne Conrad, born January 15, 1971, were voluntarily placed by their natural parents in the custody of Cumberland County Children's Services on December 14, 1971. On December 8, 1972, they were placed in the home of Claude and Barbara Marston as foster children. The parental rights of the natural parents were voluntarily terminated on March 11, 1975, and legal custody of both children was placed in Children's Services. On March 30, 1978, after several administrative hearings conducted by Children's Services, it was determined that the Marstons could not be approved as adoptive parents and that the children should be placed in another prospective adoptive home. The Marstons had been experiencing marital difficulties which resulted in Mr. Marston's leaving the home for lengthy periods on several occasions prior to the final separation on March 8, 1978. Since that

time, the children have remained with Mrs. Marston, who has refused to voluntarily relinquish the children to the agency.

Pursuant to the decision in Child Care Service v. Com. Department of Public Welfare, 35 Pa. Commonwealth Ct. 81, 385 A. 2d 593 (1978), Children's Services filed a petition on July 6, 1978, for relocation of the children from the Marston home for the purpose of placement in an adoptive home. Hearing on the petition was held on August 7, 1978,* and the matter was taken under advisement.

There is no question that Mrs. Marston has standing to contest the decision of Children's Services to remove the children from her home: Stapleton v. Dauphin County Child Care Service, 228 Pa. Superior Ct. 371, 324 A. 2d 562 (1974). A number of cases following Stapleton have dealt with the efforts of a child care agency to remove children from foster parents. None to our knowledge, however, deal with the removal of a child with a view to placing it for adoption except the Child Care Service case which deals only with procedure.

Prior to 1970, the legislature became aware that a great many children remained in foster homes because they were not eligible for adoption because the rights of the natural parents could not be terminated. Recognizing this situation, the Adoption Act of July 24, 1970, P.L. 620, 1 P.S. §101 et seq., was enacted for the avowed purpose of freeing children for adoption whose parents were unwilling to assume parental duties but still clung to their rights as a parent.

---

*At the hearing the children were represented by counsel appointed by the court. See Stapleton v. Dauphin County Child Care Service, 228 Pa. Superior Ct. 371, 324 A. 2d 562 (1974).

With this situation in mind, the question must be raised whether a child now freed for adoption through termination of the rights of a natural parent can have his opportunity to have legal parents frustrated because of the claim of foster parents to his custody.

Even without this complication, there is a lack of judicial guidance as to what factors should be considered in determining the "best interests of the child" which the courts have asserted as the sole consideration in reaching a decision to remove a child from a foster parent: Stapleton, supra. "Best interests" has generally been defined to mean the physical, intellectual, moral, and spiritual well-being of the child: Com. ex rel. Holschuh v. Holland-Mority, 448 Pa. 437, 292 A. 2d 380 (1972); Auman v. Eash, 228 Pa. Superior Ct. 242, 323 A. 2d 94 (1974). Such factors as the quality of the foster home, the length of time the child has spent in the foster home, the age and adoptability of the child, the emotional relationship between the child and the foster parents, and the child's own preferences are of paramount importance. See Com. ex rel. Children's Aid Society v. Gard, 362 Pa. 85, 66 A. 2d 300 (1949); Gunter v. Gunter, 240 Pa. Superior Ct. 382, 361 A. 2d 307 (1976); Stapleton v. Dauphin County Child Care Service, supra; Com. ex rel. Bankert v. Children's Services, 224 Pa. Superior Ct. 556, 307 A. 2d 411 (1973); Com. ex rel. Bradley v. Bradley, 188 Pa. Superior Ct. 108, 146 A. 2d 147 (1958).

Further, the courts have not been clear as to who has the burden to show where the best interests of the child lie. Certainly if removal resulted in adoption, then the child's best interest would theoretically be substantially furthered (we must recog-

nize, however, that adoption like marriage is sometimes less than successful). Unfortunately the court will almost never be in a position to consider the proposed adoption home vis-a-vis the foster home. Few prospective adoptive parents would risk a confrontation with foster parents, and almost no agency would become involved in such a situation where the object of beneficence becomes a soccer ball to be propelled hither and yon by the conflicting parties.

What weight and consideration, if any, should be given to the fact that the children, if removed from Mrs. Marston, would be placed for adoption? If the judicial answer is none, then the lofty legislative ideals which produced the Adoption Act of 1970 come to naught. The same result is reached if consideration is given to the placing in juxtaposition the foster and adoptive home for the reasons already stated. In the case at bar, although innuendoes run throughout the testimony pointing to deficiencies in the Marston home, there was little solid evidence presented that would indicate that Mrs. Marston has not been a good mother to these children or will not be in the future. The most damaging testimony against Mrs. Marston came from Stanley Schneider, a psychologist called by Mrs. Marston to testify. He had previously conducted separate testing and interviews with her and the children. Although he testified that Mrs. Marston has trouble making quick decisions and may have some trouble managing the children during adolescence, he also testified that her situation was at least partially aggravated by the uncertainty surrounding the future custody of the children. It is difficult, however, to place much emphasis on this testimony based on examinations conducted over one year ago.

Cases such as this present unique and difficult questions regarding the desirability of extended foster care. These children have been in the Marston home for over five years, during which time it is clear that the children and Mrs. Marston have developed strong emotional ties. The appearance and behavior of the children attest to the fact that the Marstons have been devoted parents and that the children have received all of their physical needs. We are troubled, however, by the fact that in the future Mrs. Marston will be assuming parental control over these two boys alone as there seems no hope of a marital reconciliation with her husband. Mrs. Marston indicated that she desires to adopt both boys; however, the totality of the testimony tends to support the asserted position of Cumberland County Children's Services that such would not be in the best interests of the children. In addition to questions as to her ability to cope with the children, there is a question of her financial situation; clearly she could not support them on her own income, and her support from her husband and possible supplemental income as an adopting parent seems more conjectural than realistic.

Certainly these children deserve more than permanent foster care. Wayne and Jonathan, ages ten and seven respectively, are reaching the age where it will become increasingly difficult to place them for adoption. This leaves the court with the task of trying to balance the interests of the foster parents and perhaps the desires of the children against the long-term goal of giving the children a permanent home.

Suffice it to say that we find the evidence insufficient to support the removal of the children from Mrs. Marston's home. We reach this conclusion without prejudice to Children's Services to conduct

further studies of the home environment with a view towards resolving this matter in favor of keeping the children with Mrs. Marston or filing another petition for relocation at a later date.

### ORDER

And now, August 30, 1978, for the reasons stated in the opinion filed this date, the petition for relocation is dismissed without prejudice.