# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carmen and Brian Albrecht,      :
     :
     Petitioners      :
     :
     v.      : No. 1009 C.D. 2017
     : Submitted: June 7, 2018
Department of Human Services,      :
     :
     Respondent      :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                 **FILED:   July 17, 2018**

This is a petition for review of a final order of the Bureau of Hearings and Appeals (BHA) of the Department of Human Services (Department) denying the appeal of Carmen and Brian Albrecht (Petitioners) from a decision of Berks County Children and Youth Services (CYS) closing Petitioners' home as a foster family placement resource. For the reasons set forth below, we affirm.

Petitioner Carmen Albrecht is the mother of T.S. (Mother) and the grandmother of Mother's four children, two boys, D.C. and A.S., born in 2006 and 2008, and two girls. (Administrative Law Judge (ALJ) Adjudication Findings of Fact (F.F.) ¶¶2-3; Hearing Transcript (H.T.) at 37-38, 62-63, Reproduced Record (R.R.) at 41a-43a, 67a-68a; CYS Exs. 4, 5, R.R. at 215a, 218a.) Petitioner Brian Albrecht is Carmen Albrecht's husband and the step-grandfather of Mother's four children. D.C. and A.S. lived with Petitioners until 2010, when Mother took them to live with

her.  (ALJ Adjudication F.F. ¶2; H.T. at 134-35, R.R. at 139a-140a.)  Between 1999 and 2006, Petitioner Carmen Albrecht was convicted of DUI, marijuana possession, and prostitution offenses and served some time in prison.  (ALJ Adjudication F.F. ¶8; H.T. at 59, 61, 142, 146, R.R. at 64a, 66a, 147a, 151a.)  Carmen Albrecht also has had a seizure or seizures in the past and does not have a valid driver's license.  (ALJ Adjudication F.F. ¶10; H.T. at 59-60, 93-94, 122-24, R.R. at 64a-65a, 98a-99a, 127a-129a.)

In the summer of 2015, CYS removed all four children from Mother and they were placed in foster care.  (H.T. at 37-38, 54, R.R. at 42a-43a, 59a.)  In November 2015, CYS approved Petitioners' home as a foster family placement resource and placed D.C. and A.S. in Petitioners' home.  (ALJ Adjudication F.F. ¶¶1, 11; H.T. at 35, 37, 54, R.R. at 40a, 42a, 59a.)  CYS was aware of Carmen Albrecht's criminal history and seizure and driver's license issues at the time that it approved Petitioners' home and placed D.C. and A.S. in their care.  (ALJ Adjudication F.F. ¶9; H.T. at 58-59, 65, 68, R.R. at 63a-64a, 70a, 73a.)  The two girls remained in the foster home in which they were previously placed and were not placed in Petitioners' home.  (H.T. at 37-38, R.R. at 42a-43a.)  Mother and A.S.'s father were permitted to see D.C., A.S. and the two girls only at supervised visits and Carmen Albrecht was not allowed to have Mother together with the children unless special permission was given by CYS.  (ALJ Adjudication F.F. ¶5; H.T. at 19, 60, 183-84, 193, R.R. at 24a, 65a, 188a-189a, 198a.)  This restriction applied to all contacts between Mother and the children.  (H.T. at 193, R.R. at 198a.)[1]

---

[1] The reasons for the removal of the children and for the restrictions on Mother's contact with them are not in the record.

Following an incident on August 1, 2016, in which Petitioner Carmen Albrecht transported Mother and A.S.'s father in her car with all four children, CYS removed D.C. and A.S. from Petitioners' care and filed motions in the Berks County Court of Common Pleas (common pleas court) to modify placement, seeking approval of D.C.'s and A.S.'s placement in a different foster home. (H.T. at 39-41, R.R. at 44a-46a; CYS Exs. 3, 4, R.R. at 205a-213a, 215a-216a.) On August 10, 2016, CYS sent Petitioners a letter notifying them that it had closed their home as a foster family placement resource. (ALJ Adjudication F.F. ¶24; R.R. at 2a.) On August 17, 2016, Petitioners appealed that closure decision to the Department. (R.R. at 4a.) On August 17, 2016, the common pleas court issued orders granting CYS's motions to modify placement and directing that D.C. and A.S. be removed from Petitioners' home. (ALJ Adjudication F.F. ¶25; CYS Exs. 4, 5, R.R. at 215a-216a, 218a-219a.)

On March 21, 2017, an evidentiary hearing was held on Petitioners' appeal by an ALJ. Only CYS's decision closing Petitioners' home as a foster family placement resource was before the ALJ; the removal of D.C. and A.S. was not before the ALJ. (H.T. at 5-10, R.R. at 10a-15a; ALJ Adjudication at 2.) At the hearing, two CYS employees and three employees of the CYS contractor that supervised Mother's visits testified for CYS. The CYS employees testified that they had specifically told Petitioners that Mother and the children's fathers could not have contact with D.C. and A.S. outside the supervised visits and that despite these instructions, Carmen Albrecht had them talk on the telephone with Mother without CYS supervision or permission. (H.T. at 60, 81-82, R.R. at 65a, 86a-87a.) The employees of the CYS contractor testified that on August 1, 2016, following a supervised visit, Carmen Albrecht allowed Mother and A.S.'s father to ride in her car with all four children and that no permission was given for this unsupervised contact with the children. (*Id.*

3

at 18-22, 182-85, 188-93, R.R. at 23a-27a, 187a-190a, 193a-198a.) The CYS employees also testified that Carmen Albrecht did not cooperate with a parenting program, that information that CYS confidentially provided to Carmen Albrecht was communicated to Mother, and that Carmen Albrecht told the children to limit what they said about their time with her. (*Id.* at 36-39, 43-46, 66-67, 75, 80-81, R.R. at 41a-44a, 48a-51a, 71a-72a, 80a, 85a-86a.) In addition, one of the CYS employees testified that Petitioners had driven D.C. and A.S. in January 2016 without car seats or seat belts and had been told after that incident of the importance of using car seats and seat belts. (*Id.* at 36, 52, 70-73, R.R. at 41a, 57a, 75a-78a.) That CYS employee admitted that Petitioners obtained proper car seats after the January 2016 incident, and that CYS had no first-hand knowledge that the children were later driven without proper use of car seats or seat belts. (*Id.* at 52-53, R.R. at 57a-58a.) An employee of the contractor testified that in the August 1, 2016 incident, there were more occupants in the car than its seating capacity and Carmen Albrecht got into the driver's seat and drove the car. (*Id.* at 19-25, R.R. at 24a-30a.)

Petitioner Carmen Albrecht and A.S.'s father testified for Petitioners at the hearing. Carmen Albrecht testified that on August 1, 2016, she allowed Mother and A.S.'s father to ride with her and the four children after A.S.'s father told her that the person supervising the visit gave permission. (H.T. at 97-100, 110-16, R.R. at 102a-105a, 115a-121a.) She testified that her brother drove and that she rode in the front passenger seat, but admitted that she initially lied and told CYS that Mother was not in the car. (*Id.* at 100-01, 104, 106, 110-11, 127-28, R.R. at 105a-106a, 109a, 111a, 115a-116a, 132a-133a.) Carmen Albrecht admitted that she let D.C. and A.S. talk on the telephone with Mother, but testified that CYS knew about the calls. (*Id.* at 105, 131-34, R.R. at 110a, 136a-139a.) In response to questions from the ALJ

4

concerning her relationship with Mother, Carmen Albrecht testified that it was "hard to see my daughter not be able to see the kids and not able to talk to them or visit them when she wants to." (*Id.* at 157, R.R. at 162a.) She also testified that she told the girls not to report how things were at her house and their foster parents' house because she did not want them using what was allowed at one house to get the other to change its rules and did not want inaccurate or misunderstood information to be reported. (*Id.* at 101-04, R.R. at 106a-109a.) Carmen Albrecht admitted that she and her husband took the four children to a McDonalds in a vehicle without car seats in January 2016, and testified that after the incident, she and her husband bought a larger vehicle and car seats. (*Id.* at 94, 107-09, R.R. at 99a, 112a-114a.) She testified that on August 1, 2016, all the children were in car seats and the only individuals who were not properly seatbelted were Mother and A.S.'s father. (*Id.* at 100, 106, 110-15, 120-21, R.R. at 105a, 111a, 115a-120a, 125a-126a.) A.S.'s father testified that after the supervised visit on August 1, 2016, he asked if he and Mother could ride in the car with Carmen Albrecht and the children and that the person who supervised the visit told him that they could "as long as she doesn't see it." (*Id.* at 167-70, R.R. at 172a-175a.)

Following the evidentiary hearing, the ALJ issued a proposed adjudication recommending denial of Petitioners' appeal. The ALJ found CYS's witnesses credible and found the testimony of Carmen Albrecht and A.S.'s father not credible. (ALJ Adjudication F.F. ¶¶27-33, Discussion at 13-14.) The ALJ concluded that CYS had met its burden of proving that the closure of Petitioners' home as a foster family resource was correct under Department regulation 55 Pa. Code § 3700.64, setting forth the factors to be considered in approving foster parents, because CYS had shown that Petitioners were unable to provide care, nurturing and

supervision, that existing family relationships negatively affected children in their care, and that Petitioners were not able to work in partnership with CYS. (ALJ Adjudication Discussion at 11-14.) On June 27, 2017, BHA issued an order adopting the ALJ's proposed adjudication in its entirety. Petitioners timely appealed this final determination to this Court.[2]

Petitioners argue that the Department and CYS lacked authority to require that they be licensed to provide foster care to their grandchildren because Article IX of the Human Services Code[3] does not grant the Department authority to regulate grandparent foster caregivers. We do not agree.

Section 902 of the Human Services Code provides that the Department "shall have supervision over … (3) [a]ll children's institutions within this Commonwealth." 62 P.S. § 902. Section 901 of the Human Services Code excludes from the definition of "children's institutions" individuals who are caring for children to whom they are related "by blood or marriage within the second degree." 62 P.S. § 901.[4] Grandparents are related to their grandchildren within the second degree. *See Estate of Cox*, 476 A.2d 367, 370 n.2 (Pa. Super. 1984).

---

[2] The Court's review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Our Lady of Victory Catholic Church v. Department of Human Services*, 153 A.3d 1124, 1127 n.3 (Pa. Cmwlth. 2016); *Martz v. Department of Public Welfare*, 536 A.2d 496, 497 (Pa. Cmwlth. 1988).

[3] Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101-1503. Article IX of the Human Services Code consists of Sections 901-922 of the Human Services Code, 62 P.S. §§ 901–922.

[4] Section 901 defines "children's institutions" as follows:

> any incorporated or unincorporated organization, society, corporation or agency, public or private, which may receive or care for children, or place them in foster family homes, either at board, wages or free; or any individual who, for hire, gain or reward, receives for care a child, unless he is related to such child by blood or marriage within the second degree; or any individual, not in the regular employ of the court or of an organization, society, association or agency, duly certified by the

6

Article IX of the Human Services Code, however, is not the sole basis for the Department's foster care regulations. The foster care regulations were also promulgated under the authority granted to the Department by Article VII of the Human Services Code, 62 P.S. §§ 701-774; the Juvenile Act, 42 Pa. C.S. §§ 6301-6375; and the Child Protective Services Law, 23 Pa. C.S. §§ 6301-6386. 55 Pa. Code § 3700.3. Both the Child Protective Services Law and Article VII of the Human Services Code empower the Department to promulgate regulations requiring approval of foster families without any exclusion or limitation for foster caregivers who are related to the children. Section 6344 of the Child Protective Services Law sets forth factors that a foster care agency is to consider in approving foster families and provides that the Department "shall promulgate the regulations necessary to carry out this section." 23 Pa. C.S. § 6344(d)(2), (g). Article VII of the Human Services Code grants the Department authority to promulgate regulations governing foster care and agency relocation of children from one foster family to another. Sections 701 and 703 of the Human Services Code, 62 P.S. §§ 701, 703 (requiring Department to assure availability and provision of public child welfare services and granting Department authority to "make and enforce all rules and regulations necessary and appropriate to the proper accomplishment of the child welfare duties and functions vested by law in the county institution districts or their successors"); *Child Care Service v. Department of Public Welfare*, 385 A.2d 593, 595 (Pa. Cmwlth. 1978)

---

department, who in any manner becomes a party to the placing of children in foster homes, unless he is related to such children by blood or marriage within the second degree, or is the duly appointed guardian thereof. The term shall not include a family child care home or child day care center operated for profit and subject to the provisions of Article X.

62 P.S. § 901 (emphasis added). CYS, as a public agency "which may receive or care for children, or place them in foster family homes" is a "children's institution" subject to the Department's regulatory power under Section 902 of the Human Services Code.

(Department has authority under Section 703 of the Human Services Code to promulgate foster care regulations, but not to regulate adoption, which is in the original jurisdiction of courts of common pleas); *see also In re Lowry*, 484 A.2d 383, 386-87 (Pa. 1984) (Department has authority under Section 703 of the Human Services Code to regulate county children and youth services agency, but regulations do not bind court of common pleas in ruling on child's best interests and do not limit court placement to approved foster care home).

Contrary to Petitioners' contention, Section 1303(c)(1)(i) of the Human Services Code[5] does not negate the Department's or CYS's authority over grandparent foster caregivers or limit that authority to regulating payment for foster care. Section 1303(c)(1)(i) provides that "[r]elatives shall receive the same foster care rate as other foster parents if they are complying with the regulations governing foster parents." 62 P.S. § 1303(c)(1)(i). The fact that payment to relatives is conditioned on compliance with foster care regulations does not suggest that relatives caring for children who have been placed in foster care are exempted from foster care requirements if they do not seek payment. Rather, it addresses the fact that relatives may be caring for children under other custody arrangements outside the foster care system and limits payments to relatives to those who are providing care as foster parents. *See J.V. v. Department of Public Welfare*, (Pa. Cmwlth., No. 1343 C.D. 2014, filed April 29, 2015) (grandparents who had custody under an agreement with parents of children who were not in foster care were not eligible for foster care payments).[6] Here, because D.C. and A.S. were in CYS's custody and Petitioners

---

[5] Section 1303 of the Human Services Code was added by the Act of September 30, 2003, P.L. 169.

[6] Because *J.V.* and *Berks County Children and Youth Services v. Department of Public Welfare*, (Pa. Cmwlth., No. 1238 C.D. 2010, filed January 6, 2011), discussed below, are unreported decisions, they are not binding precedent, but are considered by the Court for their persuasive value. 210 Pa. Code § 69.414(a).

were caring for them as foster parents, Petitioners were subject to foster care requirements regardless of whether they sought foster care payments.

Petitioners also argue that different standards for approval and closure of a home as a foster family placement resource must be applied to grandparent foster parents from those that apply to foster families who are unrelated to the children, and contend that the ALJ erred in applying the foster care approval standards to Petitioners in the same way as they would be applied to non-relatives. This argument likewise fails.

The statutes and regulations governing foster family approval do not set a different standard for grandparents or other relatives. Section 6344(d)(2) of the Child Protective Services Law states that foster family care agencies shall consider the following factors in assessing applicants for approval as foster parents:

> (i) The ability to provide care, nurturing and supervision to children.
> (ii) Mental and emotional well-being. If there is a question regarding the mental or emotional stability of a family member which might have a negative effect on a foster child, the foster family care agency shall require a psychological evaluation of that person before approving the foster family home.
> (iii) Supportive community ties with family, friends and neighbors.
> (iv) Existing family relationships, attitudes and expectations regarding the applicant's own children and parent/child relationships, especially as they might affect a foster child.
> (v) Ability of the applicant to accept a foster child's relationship with his own parents.
> (vi) The applicant's ability to care for children with special needs.
> (vii) Number and characteristics of foster children best suited to the foster family.
> (viii) Ability of the applicant to work in partnership with a foster family care agency. This subparagraph shall not be construed to preclude an applicant from advocating on the part of a child.

9

23 Pa. C.S. § 6344(d)(2)(i)-(viii). The Department's foster care regulations require foster family care agencies to consider the same eight factors in assessing applicants for approval as foster parents. 55 Pa. Code § 3700.64(a)(1)-(3), (b)(1)-(5).[7]

The ALJ applied these factors in upholding CYS's closure of Petitioners' home as a foster family resource. (ALJ Adjudication Discussion at 8-9, 11-14.) Petitioners argue that applying these standards to grandparent foster parents in the same way as they would be applied to non-relative foster families conflicts with Section 1303 of the Human Services Code and Sections 5324, 5325, and 5328 of the Child Protective Services Law. These statutes, however, do not deal with the standards for approval of foster families.

Section 1303 of the Human Services Code requires that grandparents and other relatives be sought out and given priority in foster care placements. 62 P.S. § 1303(a.1), (b). Section 1303(b) specifically provides:

> If a child has been removed from the child's home under a voluntary placement agreement or is in the legal custody of the county agency, the county agency shall give first consideration to placement with relatives or kin. The county agency shall document that an attempt was made to place the child with a relative or kin. If the child is not placed with a relative or kin, the agency shall document the reason why such placement was not possible.

62 P.S. § 1303(b). This preference for relatives is a preference for "placement," and Section 1303 provides that the relatives must be given a notice that includes "[t]he requirements to become a foster parent." 62 P.S. § 1303(a.1)(2).

---

[7] The Department's regulation phrases the factor listed in Section 6344(d)(2)(ii) as "[a] demonstrated stable mental and emotional adjustment" and lists the Section 6344(d)(2)(iv)-(vii) factors as factors that the foster care agency must consider in determining whether the first three factors are satisfied. 55 Pa. Code § 3700.64(a)(2), (b)(1)-(5).

Placement with relatives under Section 1303, known as kinship care, is a subset of foster care, and is properly rejected where the relatives are "not appropriate resources." *In re Adoption of G.R.L.*, 26 A.3d 1124, 1127, 1129-30 (Pa. Super. 2011). This Court, in unreported decisions, has held that the requirements for approval of foster care families apply equally to foster care under Section 1303. In *J.V.*, the Court held that "[a] kinship care provider must meet all the requirements that foster care parents meet in order to be eligible for the placement of dependent children and to receive payments." *J.V.*, slip op. at 14. In *Berks County Children and Youth Services v. Department of Public Welfare*, (Pa. Cmwlth., No. 1238 C.D. 2010, filed January 6, 2011), the Court held that the agency improperly failed to consider and give priority to a kinship care applicant when it imposed an additional requirement for approval beyond the criteria in Section 6344(d)(2) of the Child Protective Services Law and 55 Pa. Code § 3700.64. The Court treated Section 6344(d)(2) and 55 Pa. Code § 3700.64 as applicable to kinship care and concluded that the additional requirement "serves no rational purpose" because "[a]ll of these mandatory considerations" in those general foster family approval standards "help to prevent children from being placed into homes where there are already problems in the home." *Berks County Children and Youth Services*, slip op. at 5-8.

Sections 5324, 5325, and 5328 of the Child Protective Services Law address custody disputes, not foster care. Sections 5324 and 5325 provide that grandparents have rights to seek custody or partial custody of their grandchildren in certain circumstances and Section 5328 addresses the factors to be considered by a court in awarding custody. 23 Pa. C.S. §§ 5324, 5325, 5328.

The issue here is whether Petitioners met the requirements for approval as foster parents, not the placement or custody of D.C. and A.S.  At the outset of the evidentiary hearing, Petitioners' counsel specifically stated:

> We're not appealing the removal of the children. … We appealed the removal of the license. We did not appeal the removal of the children.
>
>      *       *       *
>
> [T]his is not an argument for placement of any children. This is an argument over a denial or rescission of the license.

(H.T. at 7, 9, R.R. at 12a, 14a.)  Because this matter did not involve placement or custody, failure to treat Petitioners differently from unrelated foster parents does not conflict with Section 1303 of the Human Services Code or the Child Protective Services Law.

The only other argument raised by Petitioners in this appeal is the claim that if Section 6344(d)(2) of the Child Protective Services Law and 55 Pa. Code § 3700.64 do not treat grandparents differently from non-relative foster families, they are unconstitutional.  This contention is without merit.  Petitioners do not cite to any authority that holds that grandparents have constitutional rights to care or custody of their grandchildren under the United States Constitution or the Pennsylvania Constitution.  The only support that Petitioners cite for their constitutional claim, *D.P. v. G.J.P.*, 146 A.3d 204 (Pa. 2016), does not hold that grandparents have any such constitutional right.  Rather the Court in *D.P.* held that <u>parents</u> have a fundamental right to make decisions as to the care, custody, and control of their children, including the right to cut off contact with grandparents, and struck down as unconstitutional the portion of Section 5325(2) of the Child Protective Services Law

12

that permitted grandparents to seek partial custody merely because the parents have been separated for six months or more. 146 A.3d at 210-217.[8]

For the foregoing reasons, we conclude that Petitioners have not shown that BHA erred in denying Petitioners' appeal of the closure of their home as a foster family placement resource. Accordingly, we affirm BHA's order.

_____
JAMES GARDNER COLINS, Senior Judge

---

[8] Petitioners do not include in their statement of questions and do not argue in their brief any claim that BHA's order is not supported by substantial evidence or that it is not in accordance with the requirements of the Department's foster care regulations or the Child Protective Services Law. Such issues are therefore waived and need not be addressed by this Court. Pa. R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"); *In re Tax Claim Bureau of Lehigh County 2012 Judicial Tax Sale*, 107 A.3d 853, 857 n.5 (Pa. Cmwlth. 2015) ("A party's failure to develop an issue in the argument section of its brief constitutes waiver of the issue").

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Carmen and Brian Albrecht, | : | |
| | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 1009 C.D. 2017 |
| | : | |
| Department of Human Services, | : | |
| | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 17th day of July, 2018, the order of the Department of Human Services, Bureau of Hearings and Appeals, is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge